## THOMAS EMERSON *vs.* BANI UDALL.

Whether it is a good defence, *at law*, to a suit on an award, that the same was obtained by fraud, *quere.*

If it be, *Held*, that it cannot be avoided by showing merely that a claim presented to the arbitrators, and by them allowed, had been previously paid, and that known to the party.

Nothing is available, in this way, except facts, which do not come within the scope of the award, and, from their nature, are not concluded by it.

This was an action of debt on judgment. Plea, *Nul Tiel Record*, and also a plea in offset, stating, that at the term of the county court, when the judgment declared on was rendered, June term, 1829, the defendant had considerable claims for payments, and demands to set off against the claims of the plaintiff in that action : that it was then agreed that the defendant should suffer judgment to go by default in that action, and he make no defence, but suffer judgment to pass for the whole of the plaintiff's claim ; and that his claims against the plaintiff should be adjusted by Willys Lyman and Harvey F. Leavitt, and that whatever they allowed should be admitted as payment on the judgment : That Lyman and Leav. itt afterwards, to wit, on the 23d of November, 1830, did adjust his claims, and allowed him $116 47, which the plaintiff has hitherto refused to accede to.

To this the plaintiff pleads *non-assumpsit*, and to the first plea replies, " there is such record."

On the trial of the issue by jury, the defendant read in evidence the award in writing, signed by Willys Lyman and Harvey F. Leavitt—the execution thereof being conceded.

The defendant introduced testimony to prove that at the term of the county court at which the plaintiff's judgment was obtained, to wit, at June term, 1829, said Udall claimed to have demands to file in offset to the claims of said Emerson and Davis, then in suit. And that said Emerson then agreed with said Udall that judgment should be entered for the then plaintiffs for the whole amount of their claims described in their declaration, and they and said Udall would adjust the claims of said Udall among themselves, and if they could not agree, the same should be adjusted by their counsel in said suit, to wit, Harvey F. Leavitt then attorney for the then plaintiffs, and Willys Lyman then attorney for the defendant ; and the amount, if any, found due the defendant, should be allowed on said judgment, or on the execution issued thereon. Thereupon, judgment was entered for the then plaintiffs, as described in the present declaration ; that execution was not delivered out till two or

Windsor,
February.
1836.

Emerson
vs.
Udall.

three months before making said award, before which time said Leavitt had wholly relinquished the practice of law, and removed from Hartford to Strafford, and ceased to be the attorney of the plaintiffs: That William Strong continued to be the guardian of said Davis until his decease in October, 1829: That said Strong, being the father of Davis' wife, by previous appointment in August, 1830, met the plaintiff and defendant, and they attempted between themselves to adjust the claims of said Udall: That he then presented his order for oats, (mentioned in said award,) which they refused to allow him; and thereupon, the parties separated. And afterwards, and before the time of making said award, the said Emerson informed said Leavitt, that said Leavitt and said Lyman must adjust said business, or he should do nothing further about said matter: That afterwards said Strong, by consent of said Emerson, took out execution on said judgment, on which some payments were made by said Udall: That a few days before the making of said award, the said Udall called on said Leavitt, at Strafford, and requested him to attend to the adjusting of his said claims, and said Leavitt having some engagements of another character, appointed a time to attend to said business at the office of Willys Lyman at White River Village in Hartford, being the next Saturday, being as short a time as he, said Leavitt, could go, after being discharged of his other engagements, and he wrote by mail to said Emerson at Windsor, where he then resided, informing him of said appointment, allowing him as much time after receiving said letter by due course of mail, to go to said Hartford from Windsor, as said Leavitt would have, after discharging his previous engagements, to go from Strafford to Hartford.. No notice was given to said Strong. At the time and place so appointed, the said Leavitt and Lyman met, and said Udall attended; but said Emerson did not attend, nor said Strong. The said Leavitt and Lyman both testified that they had not before that time heard of said claim of said Udall for money collected by G. E. Wales, Esq., mentioned in said award: That said Leavitt and Lyman proceeded to the adjustment of the claims of said Udall, and among other testimony by them examined, they administered an oath to said Udall, and examined him in relation to his claims, or some of them; and after examination, they made and signed their award aforesaid.

The defendant introduced testimony further tending to prove, that after making said award he commenced an action thereon against said Emerson, returnable to Windsor county court, and the said Emerson told the attorney of said Udall that he supposed it

had been applied, and that it should be, and he would pay the cost which had been made in said action—whereupon, the said attorney neglected to enter said suit, and that said Emerson made no mention of his not having received due notice to attend said arbitrament, or any other objection thereto.

The plaintiff introduced testimony tending to prove, that said Udall's claim, described in said award as an order for oats, was a false claim, as he had received the oats on the order of Hyde Clark.

The court decided, that if the arbitrators kept within the submission, nothing short of corruption *in the arbitrators*. would vitiate the award.

The plaintiff insisted—1. That the decease of Davis operated as a revocation of determination of said submission.

2. That if said Udall was guilty of procuring unjust claims to be allowed by said arbitrators, it was a fraud, and would vitiate the award.

3. That the proof of notice to said Emerson was wholly defective without further proof that he actually received said letter a reasonable time before said hearing, to go and attend it.—

And requested the court so to charge the jury.

The court charged the jury that they would first inquire whether the defendant had proved there was such a submission as the defendant, in his plea, alleged ; and if the same was proved, the death of Davis did not determine the same. If they found said submission proved, the jury would next find whether, by the testimony, it was shown that said Emerson had notice a reasonable time before the hearing by the arbitrators, to attend to the same. That in deciding this point, the jury would consider the proof in relation to the letter being sent by mail, in relation to which, in the absence of any proof to the contrary, the legal presumption would be, that Emerson received the same in the ordinary course of mail ; and in deciding this point, the jury might also consider the testimony which tended to show that when Emerson was afterwards sued on the award, he made no objection to it, nor suggested that he had not received timely notice : that if the jury did not find that said Emerson received reasonable notice of the time and place of hearing, so that he might have attended, they would find for the plaintiff ; but if they found that he had reasonable notice, they would next inquire whether said arbitrators kept within the powers of the award, for they could award only of these demands which had been agreed to be-submitted to their adjustment : That if the jury found the

WINDSOR,
February,
1836.

Emerson
vs.
Udall.

WINDSOR,
February,
1836.

Emerson
vs.
Udall.

submission proved, and notice to Emerson seasonably given, and that the award contained only such matters as were submitted, then they would find for the defendant, unless said arbitrators were guilty of corruption—in which case, or if the defendant failed by his testimony to prove either of said other points, then they would find for the plaintiff.——Plaintiff excepted to this charge of the court.

*T. Hutchinson for plaintiff*—contended, That the court erred in their decision and instructions to the jury, "that if they should find the matters awarded upon," &c. &c. (as in said charge named) "they would find for the defendant, *unless* they also found corruption in the arbitrators—in which case, they would find for the plaintiff,"—whereas, the further instruction ought to have been given, or incorporated with that given, "that if they should find that said award was procured by the fraudulent conduct of the said Udall, imposing upon said arbitrators claims which he knew to be groundless, they would find for the plaintiff."—See 6 Vesey, jr. 70, *Walker* vs. *Frobisher*—17 John. R. 405, *Van Courtlandt*, &c. &c. &c., on page 410, and opinion of Senator Allen on page 425, sec. 3.—Also, 18 Com. Law Rep. 242, *Sacket* vs. *Owen*.

We also contend, that though we *may* apply to chancery to set aside awards in all cases where we are otherwise destitute of proof, yet we are not obliged so to apply, when we rely upon the fraud of the party only.—See said case of *Sacket* vs. *Owen*.

But if we charge corruption in the arbitrators, we must make them parties to a bill for relief.

We further contend, that said court, instead of leaving to the jury the question of reasonable notice or not, should have instructed them, that all the notice concerning which there was any testimony, was not reasonable notice.—18 Com. Law Rep. 244, anonymous—Chitty's Gen. Prac. vol. 2, p. 96—1 Term Rep. 167, *Tindall et al.* vs. *Brown*.—8 Petersd. R. 165, 178-9. Also, that the instructions were incorrect as to the effect of the decease of Davis.—18 Com. Law Rep. 63, *Cooper* vs. *Johnson*.

*Marsh & Williams for defendant.*—The first point is, that the death of Davis, the insane partner, operated as a revocation of the agreement to submit.

Our answer to this is, Davis was *civiliter mortuus* when the agreement was made, as appears from the fact that when the first action was instituted, Strong was his guardian, and the *tiro*, who made the declaration, declared in the name of the guardian and of the sane partner.

Emerson made the agreement for the partnership—Davis being incapable of doing any legal act; and whether he lived or died, could have no effect upon the agreement.

WINDSOR,
*February*,
1836.

Emerson
*vs.*
Udall.

Again : Emerson, after the death of Davis, informed Lyman and Leavitt, that they must go on and adjust the business. If it does not appear to have been after the death of Davis, the court may well presume that the jury so found the fact. This was a confirmation, of the submission when Emerson, the surviving partner, alone could act.

But the more important ground is, that this was an agreement in its nature irrevocable. It was made on a valuable consideration. The defendant gave up the privilege of shewing payment on the notes sued. The plea alleges *that the defendant had certain payments to prove, on which he meant to insist*, as well as claims to offset, and this fact the jury have found. By omitting to prove payments on the notes in suit, he lost, forever, all claim for such payments. The persons agreed on would have had a right, and it would have been their duty to have proceeded, if both plaintiffs had deceased, or if they had attempted to revoke the agreement. And under such circumstances, the decision would have been imperative on executors, if the parties were dead, and on the party, if living.

The statute of limitations might have run, and probably had run on the defendant's claim in offset.

It is contended that one partner may submit to arbitration any controversy relating to the partnership concerns; and so it was ruled in the case of *Skillings vs. Coolidge & Oliver*, 14. Mass. R. 43–45. If so, it could make no difference whether Davis was dead or living. As Emerson made the agreement, and expressed no dissent from it for a year, it may be regarded as an agreement to submit after the death of Davis. Davis died Oct. 1829. The award (if it should be called one) was made in November, 1830.

The second point on which the court was requested to charge for the plaintiff was, That if the defendant was guilty of procuring unjust claims to be allowed by the arbitrators, it was a fraud, and would vitiate the award.

The decision of arbitrators, who keep within their submission, and are not shewn to have acted corruptly, is as imperative on the parties as that of any other court.

The question, as to what was submitted, is a question of fact, and was, in the charge, submitted to the jury as such, and they have found that all the matters decided on were submitted.

46

WINDSOR,
*February*,
1836.

Emerson
*vs.*
Udall.

By a general submission, the law, as well as the fact, is left to the arbitrators, and their award conclusive.—*Jones* vs. *Boston Milldam Company*, 6 Pick. R. 148.

Awards are to be expounded liberally.—*McKinstry* vs. *Solomons*, and *Solomons* vs. *McKinstry*, in Error.—2 John R. 57—13 John. R. 27.

In *Jackson* vs. *Ambler*, (14 John. R. 96, 105,) it is said, where an arbitrament takes place by the mere act of the parties, it cannot be made an objection that the award is against law.

An award is binding, both as to law and fact, and even in ejectment the party against whom the award is, is estopped from setting up title.—*Selleck* vs. *Adams*, 15 John. R. 197.

And under an award in relation to land, the defendant may justify in trespass.

The court were requested to charge that the notice to Emerson, the plaintiff, was wholly defective without proof that he actually received the letter in a reasonable time to go to and attend the hearing.

The letter giving him notice of the time and place for hearing, was put into the mail so as that according to the course of the mail, he would receive it a reasonable time before the hearing for him to attend. And the charge on this point was, that the presumption of law was that he received it in due course of mail, unless the contrary was shewn. This was doubtless correct.

The letter sent by mail was sufficient. The presumption of law as stated by the court, in the absence of all proof to the contrary, is, that the letter was received in due course of mail. This, with the subsequent conduct and declarations of Emerson, that he supposed the sum allowed had been applied, and if not, it should be applied, and at the same time making no objection to the sum, nor on account of not having received notice, must, surely, satisfy every one else, as it did the jury, that there is nothing in the pretence of want of notice.

This last fact being left to the jury, the court, we think, are bound to believe was credited by them ; and if so, it renders the doings of Leavitt and Lyman imperative on the plaintiff. It was waiving all objections to the award, and binding himself to observe it ; and is of itself, if pleaded in another court in offset, a complete answer to the declaration.

The opinion of the court was delivered by

PHELPS, J.—Exception is taken to the charge of the Judge, at the trial in the court below, upon the ground of his refusal to charge

upon sundry points relating to the award pleaded in offset, as requested by the plaintiff.    And several points are made here for our decision.

WINDSOR,
February,
1836.

Emerson
vs.
Udall.

First, it is argued, that Emerson, the plaintiff, and Davis, his co-partner, being joint parties to the submission, the decease of Davis, before the award was made, was, in legal effect, a revocation of the submission.    In reply to this, it need only be said, that whatever might be the legal effect of the decease of Davis, it was ·competent for the surviving parties to proceed with the submission, in the same sense that it was competent for them to submit their differences after his decease.    The submission, being by parol, could be enlarged or extended by parol, and the arbitrators having proceeded by express direction of the plaintiff, after the decease of his partner, it certainly is not competent for him to object their want of authority.

Secondly, it is insisted, that the notice given by the arbitrators of the time and place of hearing was not sufficient.    This point was left to the jury, upon the reasonableness of that notice, and very properly, as we apprehend.    The case has been compared to the case of negotiable paper, where the sufficiency of the notice is matter of law.    But, in our opinion, the cases are widely different.    In the case of negotiable paper, the law requires immediate notice, as a matter of strict law, and as a condition precedent to the right of recovery.    The sufficiency of the notice does not depend upon its reasonableness, under the circumstances of each case, but upon its conformity with certain established and arbitrary rules, universally acknowledged, and which, from this circumstance, are regarded as making a part of, and qualifying the contract.    Hence they must be as strictly conformed to, as if expressly incorporated into the contract.    And a jury have nothing to do with the reasonableness of notice in such case, any more than they have with that of any rule of law, which is founded, not so much upon the equity of the case, as upon considerations of general expediency.    But in this case, all that the law can require is ·reasonable notice.    The object is merely to enable the party to prepare for trial ; and if this purpose is answered, the law is satisfied.    Whether notice, in any given case, is sufficient for this object, depends altogether upon the circumstances of the case, and becomes, in this view, a mixed question of law and fact, proper for the consideration of a jury.

Thirdly, It is objected that the court erred in omitting to charge the jury, that fraud in the party, in obtaining the award, will vitiate it.

WINDSOR,
February,
1836.
Emerson
vs.
Udall.

We deem it unnecessary to follow the counsel in the discussion of the question, whether fraud in obtaining an award will furnish an available defence at law to an action on the award.  For we may concede to them the general proposition, and yet it will be no difficult matter to sustain the charge.

The facts relied on by the plaintiff, as constituting the fraud, which he insists is sufficient to avoid the award, consist merely of the assumption that the claim presented by the defendant to the arbitrators, and by them allowed, had been previously paid, and the inference that the defendant was cognizant of the fact.  It is obvious that if such a defence were admissible, courts of law could be required, in all cases, to re-examine the decision of the arbitrators, and that the award would be divested at once of its conclusive character.  The question whether a claim allowed by arbitrators be well or ill founded, would, in most cases, be a question for the jury to decide ; and the question as to the knowledge of the party would always be so.  Such a defence, if admitted, would necessarily open the original controversy, and the award would be no more than *prima facie* evidence.  The validity of the award would depend upon the original merits of the controversy, and the party who seeks to enforce it would be compelled to rely, not so much upon the determination itself, as upon the evidence upon which it was originally obtained.  At the same time, courts would be compelled to set aside an award, whenever their opinion, either as to the law or the inferences of fact to be drawn from the evidence, differed from that of the arbitrators.  While the party, in order to avail himself of the award, must be always prepared to sustain its propriety by evidence of the legality and justice of his claim.

In short, the award is in itself conclusive of the legality and justice of the claim, and of all inferences to be drawn from its legality or falsity.  And to avoid it upon the score of fraud, it becomes necessary to prove facts not within the scope of inquiry before the arbitrators, and from their nature not concluded by the award.  Such cases may exist, and a positive fraud may be proved, without impugning the conclusive character of the award.  But we are all of opinion, that something more is necessary for this purpose than simply to shew that the claim was unfounded, and that it is fairly inferable from the evidence exhibited, that the party was cognizant of the fact.

Without deciding whether a court of law can entertain such a defence, we think the charge of the county court correct, upon the

WINDSOR,
*February.*
1836.
Emerson
*vs.*
Udall.

ground that the award cannot be impeached in the manner here attempted, and upon the evidence exhibited.

Judgment affirmed.